(54 Misc. 215)

### BEINHAUER v. BALDWIN ENGINEERING CO.

(Supreme Court, Appellate Term. May 16, 1907.)

**1. APPEAL—FROM JUDGMENT ONLY—REVIEW.**

On appeal from the judgment only, and not from the order denying a new trial, the facts cannot be reviewed; but inquiry is limited to an examination of the record for errors of law, excepted to, warranting a reversal.

**2. CONTRACTS—ACTION FOR BREACH—EVIDENCE.**

Defendant, in an action for breach of contract to install a steam plant in a building, may show that the plans furnished it by which to do the work had been materially changed from those furnished it on which to make its bid.

**3. SAME—WAIVER OF PROVISION.**

Defendant, by signing a contract to install a heating plant according to the drawing prepared by the architect, "which drawing and specifications are identified by the signature of the parties hereto," when such drawing and specifications had not been signed and were not present, plaintiff agreeing to send them to it, waives such provision, so that they can be otherwise identified.

Appeal from City Court of New York, Trial Term.

Action by Alfred Beinhauer against the Baldwin Engineering Company. From a judgment for plaintiff, entered by direction of the court, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and BRADY, JJ.

Henry Warren Beebe, for appellant.
Eidlitz & Hulse, for respondent.

BRADY, J. The appeal herein having been taken from the judgment, and none having been taken from the order denying the defendant's motion for a new trial, the facts in the case cannot be reviewed by this court, and we can only examine the record with a view of ascertaining whether or not there are errors of law, to which exceptions were taken, sufficient to warrant a reversal of the judgment.

The action was brought to recover damages for the alleged breach of a contract between the plaintiff and the defendant, by the terms of which the defendant agreed to install a steam heating plant in a building in course of erection by the plaintiff as contractor. So far as the facts herein are material for the determination of this appeal, the following only need be adverted to, and these do not seem to be disputed: The plaintiff, being engaged in erecting a storage warehouse, in April, 1905, requested bids for installing the heating apparatus, and several firms, including the defendant, submitted offers for such work. The defendant being the lower bidder, its offer was accepted. Nothing further was done until, on August 9, 1905, the defendant's president, Hadden, went to the plaintiff's office and signed a contract, which provided that the defendant should do all the work and furnish all the material "mentioned and shown on the drawing prepared by the architect for the complete installation of the heating apparatus, * * * which drawing and specifications are identified by the signatures of the parties hereto." It was also provided therein that, should the defendant fail to diligently prosecute the work, etc., the employment of the defendant should be terminated upon notice. At the time this contract was signed by the parties the plans and specifications were not signed for identification. Hadden testifies that he asked at this time for the plans and specifications, and that the plaintiff asked his superintendent to find them, but that they were mislaid, and the plaintiff said he would send them to the defendant later. On August 10th, by a letter from the plaintiff to the defendant, it appears that copies of the contract and a specification were sent to defendant, with a request that they be signed and returned, and on August 11, 1905, by letter to the plaintiff from the defendant, the following appears:

" * * * We have signed two copies, and herewith return one. We have also received one copy of the specifications. If you will kindly send us as soon as possible two sets of plans, we will submit a heating layout satisfactory to your office."

The plans however were not sent to the defendants until the 10th or 12th of September. The defendant claims then to have discovered that the plans sent were not identical with the plans on which their bid was based, and on October 18, 1905, by letter to the plaintiff, the defendant so informed the plaintiff, saying:

"Referring to the plans showing the heating for the Brush Warehouse Building, * * * I write to say that the layout as shown is not at all in accordance with the proposal we made you. We based our estimate on the installation of a low-pressure heating system, the apparatus to be of sufficient capacity to warm the upper floors to 70 degrees and the first floor to 50 degrees. The total number of radiators we figured on were 34, and the total heating surface 2,380 sq. ft. The layout according to the plans you sent us shows 37 radiators and one coil, with a total heating surface of 4,236 sq. ft. If you wish the work done in accordance with the drawings you sent, we will

make you an estimate on the same. If the work is to be installed in accordance with layout proposal, we would ask that you send us two sets of prints upon which we will show the layout for your approval."

Thereafter followed several letters between the parties and their attorneys; the plaintiff insisting that but one set of plans had been drawn and that the defendant should proceed with the work in accordance with those plans, and the defendant contending that the plans as submitted to them in September were not the plans shown them when they made their estimate and bid, but at all times expressing a willingness to comply with their proposal as made, based upon the plans claimed by them to have been first shown, or to estimate upon the cost of the work to be done according to the plans sent by plaintiff. The plaintiff thereupon canceled the contract by the requisite method of procedure provided for therein, and relet the installing of the plant to another party, paying a larger sum than the defendant had fixed, and brought this action to recover the difference between the contract price and the sum actually paid. At the conclusion of the case both sides moved for the direction of a verdict, and one was directed in favor of the plaintiff.

It will be seen, from the foregoing statement of the case, that the main issue is whether or not the plans shown the defendant in April, 1905, and upon which its estimate of cost was based and the contract made, were the same plans as those subsequently submitted to the defendant, and according to which the plaintiff insisted the work should be done. Upon the trial the testimony of the vice president of the defendant, one Baldwin, was that he "did all the figuring on the job." He says he got the plans from the office of the architect; that those plans, as he believes, were returned to the architect's office, as he had subsequently looked for them and could not find them. He also testified that the plans introduced by the plaintiff on the trial, and claimed by him to be the only and original plans, were not the same plans given to and used by the witness in April, 1905, in making the estimates upon which the defendant's bid was made. The following questions were then asked the witness:

"Q. What is the condition between these plans and the blue prints you then received?

"Q. Were the blue prints you then received the same as the present plans, except for the layout on the present plans of the heating plant?

"Q. What changes, if any, have been made in the original plans or drawings which you received and the ones which are marked 'Plaintiff's Exhibit 2'?" (Exhibit 2 being the plans submitted by plaintiff on the trial as the ones used by defendant in making the estimates.)

These and similar questions, tending to show that the plans had been materially changed, were asked by the defendant's counsel, and objected to by plaintiff's counsel, and excluded by the court, and exceptions to such rulings taken. The exclusion of this testimony was clearly error. The witness was competent, and the questions were proper, and went to the very meat of the contention. The witness was the only one who could testify exactly upon what plans the defendant based its bid in April, and whether or not the plans then given him by the plaintiff's architect were identical with those given the

104 N.Y.S.—28

defendant in September, in accordance with which the plaintiff insisted the work should be done, and it was reversible error to exclude the testimony thus sought for.

It is also urged by the appellant that as the contract contained the clause, "which drawings and specifications are identified by the signatures of the parties hereto," no drawings or specifications ever having been signed by the defendant, the minds of the parties never met, and the contract was inoperative. We do not regard this contention as having any merit. The defendant signed the contract with the clause referred to in it, and he testified that at the time he so signed it there were no drawings or specifications present, but that the plaintiff was to send them later. If he had regarded the clause as of consequence, he could have declined to execute the contract until the signatures of all the parties were attached thereto. Instead, he chose to sign it as it then existed, and must be deemed to have waived that clause. Moreover, the clause was evidently intended for the purpose of identification of the plans only, and not as essential to the validity of the contract.

For the errors above set forth there must be a new trial.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.